Wayne L. DAVIS, Appellant,

v.

UNIVERSITY OF THE DISTRICT OF COLUMBIA, et al., Appellees.

No. 89–1526.

District of Columbia Court of Appeals.

Argued Jan. 10, 1992.
Decided Feb. 11, 1992.

---

George C. Lacy, Washington, D.C., for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before FERREN and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant Davis' position as an educational service employee of the University of the District of Columbia ("UDC") was eliminated by a reduction in force ("RIF"). After the President of UDC denied his appeal, he sought review by the District of Columbia Office of Employee Appeals ("OEA") which dismissed the case for lack of jurisdiction. The Superior Court of the District of Columbia affirmed OEA's decision. Davis contends that the trial court erred in ruling that OEA lacked jurisdiction over his appeal,[1] and the denial of his due process rights to a hearing warrants that the RIF be rescinded with respect to his position. We affirm.

Davis had been employed as an educational service employee by UDC since 1970 and had held the position of instructor-counselor since 1981. In 1986, Davis'

---

1. Appellant claims his position had been improperly classified, and had it been properly classified, it would not have been selected for elimination through the RIF.

position was eliminated pursuant to a RIF,[2] and he appealed the decision to the president of UDC.[3] While the appeal was pending, he accepted the position of management assistant at UDC at a lower salary level, but he retained his previous salary for one year. After the president denied Davis' appeal,[4] he appealed to OEA in 1986. Appellant attended a pre-hearing conference and two status conferences during 1987 and 1988. The parties agreed that an evidentiary hearing was not necessary because there were no disputed issues of fact. In 1989, the OEA hearing examiner assigned to the case issued an initial decision, which was adopted by its full board. OEA dismissed the case on the ground that it did not have jurisdiction to hear appeals from RIF's of educational employees of UDC under the District of Columbia Government Comprehensive Merit Personnel Act of 1978 ("CMPA"), D.C.Code §§ 1–601.1 to 1–637.2 (1987 Repl.). Davis appealed OEA's decision to the Superior Court, pursuant to D.C.Code § 1–606.3(d), where it was affirmed.

## I

At the outset, we note that this court must conduct "the identical review that we would undertake if this appeal had been heard initially in this court." *See Kegley v. District of Columbia,* 440 A.2d 1013, 1019 (D.C.1982) (footnote omitted). Furthermore, it is well settled in this jurisdiction that we defer to an agency's interpretation of a statute it administers unless that interpretation is unreasonable in light of the prevailing law, inconsistent with the statute, or plainly erroneous. *Public Employee Relations Board v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C.1989) (citing cases); *Grant v. District*

*of Columbia,* 545 A.2d 1262 (D.C.1988). OEA is the agency charged by the CMPA, D.C.Code §§ 1–606.2, –606.3, with the responsibility of hearing and adjudicating appeals from District of Columbia agency employees. As such, it should be accorded deference in its interpretation of these provisions of the CMPA.

## A

■ The CMPA treats educational employees of UDC differently from other District employees. Educational employees of the UDC are governed by D.C.Code § 1–602.3(b), which provides that:

> the Board of Trustees of the UDC shall develop policies on classification, appointment, promotion, retention and tenure of employees consistent with the educational mission of the University and in accordance with sound policies and practices of land-grant universities which meet the standards established by the College and University Personnel Association. Additionally educational employees shall *not* be covered by subchapter[ ] ... XXV [*Reductions in Force*] of this chapter.

§ 1–602.3(b). The right of employees to appeal a RIF action to OEA is encompassed in § 1–625.4 of subchapter XXV. Because educational employees of UDC are expressly excluded from subchapter XXV,[5] OEA determined that no right of appeal to it for a RIF action exists for Davis, an educational employee of UDC. OEA concluded that it therefore lacks jurisdiction to hear Davis' appeal from the RIF action.

## B

■ However, Davis relies on other general provisions of the statute rather than

2. Appellant was given a minimum of ninety days notice of the RIF, pursuant to the UDC's regulations (8 DCMR § 1135.4 (1988), *i.e.,* he was notified on June 26, 1986 that his position was being eliminated by the RIF, and would take effect on September 30, 1986.

3. DCMR § 1139.3 (1988) provides for a request for presidential review or reconsideration.

4. On August 13, 1986, the president issued a written response to Davis' request for review in

compliance with UDC's regulations. 8 DCMR § 1139.4 (1988).

5. OEA, prior to the instant case, has dismissed for lack of jurisdiction other appeals by educational employees of UDC on identical grounds: *Cassell v. University of the District of Columbia,* OEA Docket No. 2401–0196–86 (December 30, 1988) and *Ladson v. University of the District of Columbia,* OEA Docket No. 2401–0188–86 (September 9, 1988).

the more particularized provisions relating to educational employees upon which OEA based its ruling and, consequently, insists that OEA has jurisdiction over the RIF action. He claims that the RIF should be considered equivalent to an adverse action or grievance and that OEA has jurisdiction to hear such appeals by educational employees. We find no merit in Davis' contention. While it is true that OEA has jurisdiction to hear appeals of *all* District employees for adverse actions and grievances, D.C.Code §§ 1–617.1, –617.2, a RIF action is not included in either of these actions. The provisions for a RIF action are expressly embodied in subchapter XXV, §§ 1–625.1 to 1–625.4, of the CMPA. These provisions are clearly separate and distinguishable from adverse actions and grievances which are incorporated elsewhere in the CMPA, *i.e.*, subchapter XVII, §§ 1–617.1 and 1–617.2, respectively. UDC's regulations also distinguish among the three types of actions. Adverse actions [6] and grievances [7] are covered specifically in Chapters 15 and 16 of 8 DCMR, respectively, while RIF's [8] are considered in 8 DCMR §§ 1135–1139 (1988). Moreover, the regulations specifically exclude RIF's from the category of adverse actions. 8 DCMR § 1500.3(b) (1988). Nevertheless, Davis contends that the broad language of the provisions for adverse action and grievances mandate a hearing for him before OEA. However, Davis' reliance on the general provisions of the CMPA rather than on the specific provisions for education employees of UDC is misplaced. We have adopted the proposition that

> [w]here ... general provisions, terms or expressions in one part of a statute are inconsistent with more specific or partic-

ular provisions in another part, the particular provisions must govern or control, as a clear and more definite expression of the legislative will....

*District of Columbia v. Linda Pollin Memorial Housing Corp.*, 313 A.2d 579, 583 (D.C.1974). Therefore, in deference to OEA's interpretation of the specific provisions of the CMPA which govern educational employees of UDC, we do not find that its dismissal of the instant case on the grounds of lack of jurisdiction was "unreasonable" or "plainly erroneous."

## C

■ Appellant also relies on UDC's rules and regulations concerning review and appeal of RIF decisions (8 DCMR § 1139 (1988)) to OEA. These regulations were established by UDC pursuant to D.C.Code § 1–609.1(b)(1) of the CMPA and expressly require such rule making to be consistent with subchapter VI. This subchapter covers the appellate jurisdiction of OEA and includes § 1–606.3 which provides that "[a]ny employee may appeal ... a reduction-in-force (pursuant to subchapter XXV of this chapter)." Because § 1–602.3(b) states that "educational employees shall not be covered by subchapter[s] ... XXV," it follows that UDC has no power under its rule making authority to include them. Despite this, UDC has promulgated a rule which provides that "[a]n employee may file an appeal with [OEA] if the employee believes that the University has incorrectly applied [the RIF rules and regulations]." 8 DCMR § 1139.5 (1988). However, we regard this regulation, which could be read as extending the right of appeal to OEA for *all employees*, as inconsistent with subchapter XXV of the CMPA. It is well

---

6. An adverse action, is punitive or corrective in nature and may reflect negatively on the employee's performance, conduct or reputation. § 1–617.1. An adverse action "does not mean any action which an employee does not like." *Fucik v. United States*, 655 F.2d 1089, 1096, 228 Ct.Cl. 379 (1981).

7. A grievance is defined as a complaint by an employee against the agency for a matter under the control of the District government which adversely affects the employee. D.C.Code §§ 1–603.1(10), –617.2.

8. A RIF is a reduction in personnel caused by a lack of funding or the discontinuance or curtailment of a department, program or function of an agency. A RIF, unlike an adverse action, has no role as a punitive or corrective action and should leave no blemish on the employee's record. In contrast to a grievance, a RIF is initiated by the agency rather than the employee.

settled in this jurisdiction that "a regulation [must] be consistent with the statute under which it was promulgated." *District of Columbia v. Catholic University of America*, 397 A.2d 915, 919 (D.C.1979) (citing cases). Therefore, to insure that UDC's regulations are consistent with the CMPA, we must construe that 8 DCMR § 1139.5 (1988) confers the right of appeal to OEA only to *noneducational* employees. Any other interpretation would be out of harmony with the statute and "a mere nullity." *District of Columbia v. Jones*, 287 A.2d 816, 818 (D.C.1972) (quoting *Dixon v. United States*, 381 U.S. 68, 74, 85 S.Ct. 1301, 1305, 14 L.Ed.2d 223 (1965) (quoting *Manhattan General Equipment Co. v. Commissioner of Internal Revenue*, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936)).

■ Davis also argues that he had property rights in continued employment in his previous position at UDC, and he was denied the fundamental due process right of a hearing when OEA dismissed his appeal for lack of jurisdiction. As this action was a RIF rather than a termination for cause, "it is by no means obvious that a property interest in continued employment is even implicated here." *American Federation of Government Employees v. Office of Personnel Management*, 261 U.S.App. D.C. 273, 279, 821 F.2d 761, 767 (1987).

Even if, *arguendo*, some property right is implicated by the RIF action, Davis was not denied due process because, prior to the RIF, he was given notice and opportunity to be heard.[9] *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Moreover, after the RIF, even though OEA did not review his case, he is not without an adequate remedy. Even if this court lacks direct appellate jurisdiction to review the merits of the instant case if so petitioned,[10] appellant may invoke the general equitable jurisdiction of the Superior Court so that he would be afforded a right to a hearing. *See Kennedy, supra* note 10, 516 A.2d at 180; *Barry v. Wilson, supra* note 10, 448 A.2d at 246; *Kegley, supra*, 440 A.2d at 1018; *Money v. Cullinane*, 392 A.2d 998 (D.C.1978); *Wells v. District of Columbia Board of Education*, 386 A.2d 703, 704 (D.C.1978). Thus, his claim that he was denied the due process right of a hearing is meritless.

*Affirmed.*

---

9. Pursuant to the regulations, appellant was given, "at least ninety (90) days advance notice of the RIF action." 8 DCMR § 1135.4 (1988). Furthermore, he "file[d] a request for review with the President in writing within fifteen (15) calendar days after receipt of the RIF notice." 8 DCMR § 1139.1. In considering Davis' appeal, the acting president "took into consideration [his] written and verbal statements, and other documents submitted by [him]."

10. Under the District of Columbia Administrative Procedure Act, ("DCAPA"), D.C.Code § 1–1501 *et seq.* (1987 Repl.), "any person suffering a legal wrong [by] ... an agency in a *contested case*, is entitled to judicial review ... upon filing in the District of Columbia Court of Appeals a written petition for review." § 1–1510(a) (emphasis added). However,

any matter involving "the selection or tenure of an officer or employee of the District' is specifically excluded from the definition of the term 'contested case," D.C.Code 1981 § 1–1502(8)(B), (8)(B), and therefore not directly

reviewable by this court.... *Thus, review of a tenure decision is properly in the Superior Court....* The scope of that review ... is the same as this court's scope of review under the DCAPA.

*Barry v. Wilson*, 448 A.2d 244, 246 (D.C.1982) (citations omitted) (emphasis added). We have also held that "[i]t is reasonable to consider a decision to dismiss an employee to be a tenure decision, because a dismissal obviously terminated the employee's tenure." *Kennedy v. Barry*, 516 A.2d 176, 179 (D.C.1986). Furthermore, we have determined that the "selection or tenure" exclusion "applies whenever a proceeding involves personnel decisions such as whether a person should be hired, dismissed, or transferred." *Id.* at 180 (quoting *Wells v. District of Columbia Board of Education*, 386 A.2d 703, 706 (1978)). Here, pursuant to a RIF, appellant's position at the UDC was eliminated so that he was, at least temporarily, terminated as an employee of the District of Columbia. Thus, it is unlikely that this court would have jurisdiction for direct appellate review of Davis' case.